I'm Gary Dukoff on behalf of Appellant Daniel Neblas. I've read what Your Honors have written about AEDPA, and to be candid, none of you is my first choice in this habeas case. But, of course, I've taken your words to heart because I would be a fool if I didn't. And my task today is clear. I need to convince the Court that this is that rarest of rare cases in which habeas relief is statutorily warranted. And I think I can do that. I hope I can do that because I've been practicing criminal defense for some 17 years now, and it's the most appalling transcript that I've seen. I've read Judge Kleinfeld's dissent in Ramirez v. Castro, and Your Honor pointed out that if a habeas petitioner's arguments require subtle parsing of controlling authorities, well, that's not going to get the job done. And what I respectfully suggest to the Court is that there's nothing subtle about this case. The errors, the constitutional errors are stark, and the willful blindness of the reviewing courts that have looked at it is just as stark. Well, it's clear that the trial court erred in the Batson-Prometheus conclusion, but didn't the prosecution, by offering the specific reasons in every case, make up for that error? Well, I was going to discuss the withdrawing guilty plea first, but I'm certainly happy to address Batson. Batson. I was thinking of the Batson issue, obviously. Right. That's the order in which I briefed it because it was chronological. But the whole one of my main arguments for objective unreasonableness is that the court, the trial court, never engaged in the step three analysis at all. So all that the record reveals is that the trial court sat there and listened passively as the prosecutor volunteered his reasons and then immediately said, well, I find that there's no prima facie case. And we used the wrong words, but it looked like the reasons were good. I mean, it's like if you're doing insurance defense and somebody says, well, my son had a big fight with his insurance company, that's a peremptory challenge. I would imagine, though I've never prosecuted, that if a juror says, well, my son's been in trouble with the law, that person's going to get peremptorily challenged, and it just doesn't matter what ethnic group they are, they're going to get challenged. Well, I have a couple of responses to that. First of all, Your Honor used the word, you know, that's a good reason. And this Court has said in the case of Paulino v. Castro, and this also goes to the California Court of Appeals word, which is these are legitimate reasons or good reasons. All it has to be is a nonpretextual reason. That's right. That is not discriminatory on one of these protected grounds. That's right. And that's what this Court said in Paulino. This is the quote. It does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the real reason they were stricken. Well, that goes both ways. If the person's son had been in trouble with the law, which would be a nonpretextual, ethnically neutral reason, but the real reason the prosecutor struck the person was their ethnicity, then it would be a Batson violation. Right. But here, the prosecutor gives a neutral reason, and there's nothing to indicate that it's pretextual, really, except that a bunch of Hispanics got stricken. I strongly disagree with that last statement. Okay. Show me why, because that's what I'm missing. Well, it's all of the talk that I've put into the briefs regarding comparative analysis. How are we – I think Your Honor said in the dissent from the petition for rehearing on bank in Collins v. Rice that what matters, and really the only thing that matters, is whether the prosecutor intentionally lied to conceal his discriminatory motive. And so how are we supposed to tell that? I mean, all that this trial judge did, all he did was look at him. I mean, I submit that he couldn't tell just listening to these reasons whether he was lying or not. What is required is enlisting the aid of counsel and looking at the record. And so, you know, I understand fully that arguing that an officer of the court and a prosecutor is a liar is not the quickest way to a judge's heart. But I have to do it in this case, and I think I can do it, because of what he said about challenging Lewis, one of the Hispanic jurors. And this is – well, this is the clearest lie, but it's only one of several I submit. What he said about Lewis was this. And Lewis had been previously convicted of public intoxication or public drunkenness. And his exact words after – after – in justifying the challenge to Lewis were these. I was not going to permit someone who had a prior arrest for a charge involving substance abuse, end quote, to sit on this jury. And so he says that, and yet he allows two non-Hispanic jurors who have three DUIs between them to sit. So here he's saying I'm not going to allow someone, you know, with drunkenness in his record to sit as a juror, and he allows two of them. And that's only one of them. I submit that the – He let two whites who also had alcohol violations on the jury? Oh, yes. Juror number two had two previous DUIs, and juror number five had one. And he also allowed a non-Hispanic juror to sit who had an arrest for a – yeah, he – I'm not sure if it was an arrest or a conviction for resisting arrest or resisting a police officer. And he was allowed to sit as well. So my whole point is, yes, on the face of it, these things are, you know, good or legitimate reasons. The only problem here is that they're clearly protectual, and no court ever examines it, you know, certainly not the trial court. And then the California Court of Appeals just went along, as did the district court. Then there's the justification, which I've never seen before, and I don't know if the Hispanic juror on the grounds that she's too pro-prosecution. I'm worried. I have to protect the record against an ineffective assistance of counsel claim down the road. The defense counsel should have objected and struck her. She didn't. So I'm going to do that to avoid that. You know, I suggest that's preposterous and that that's yet another lie. And then a third one that occurred during jury selection is Janelle, another Hispanic woman. And one of the reasons he gives for striking Janelle is that she's a legal assistant. And then he, once again, allows a non-Hispanic female juror to sit on the jury who is a legal assistant. So clear. And one more thing I want to say about comparative analysis. The California Court of Appeals didn't engage in it, and the district court didn't engage in it. And the cases are clear, and I've cited maybe six to ten of them in my briefs, that that is probably the most meaningful way of determining whether given reasons are protectual or not. And here you have the California courts, you know, just absolutely refusing to apply the most meaningful analysis based on, you know, State law that says we don't find this very telling at all. And I say that that's a violation of Batson because the Batson and its progeny clearly require the consideration of all relevant circumstances. And that's here we have the most relevant circumstances of all. And it's being ignored. And help me with the standard of review here. We are dealing with habeas, and you're making the Batson argument. What's the question we have to ask? Well, I think it's the question that Judge Kleinfeld posed in his dissent in that case I mentioned in Collins v. Rice, which is did he intentionally lie, and is the contrary conclusion by the State courts objectively reasonable? And I say that in light of the submitted evidence, it's clearly objectively unreasonable, and it's starkly so. But you said the first question was did the prosecution lie. Now, how do we test that? How do you tell whether he lied? Pardon? You can tell that he lied for all the reasons I've just gone into. Well, it's bound up in reasonableness, I assume. I don't know if reasonableness. We're not going to make a separate determination. We're not a fact finder. You can say that the record, I believe the Court can say because I've seen other courts do it, that the record clearly evinces that this prosecutor lied and these reasons were pretextual for the reasons that I've given you. Give me a few record sites of a lie. Well, the ---- A specific lie that is demonstrated on the record. Okay. I think the most glaring one is the one about Lewis, which is at RT 143. And that's where he gives that line about I'm not going to permit someone, you know, with public drunkenness or intoxication to sit on this jury. And then he goes ahead and does it with two non-Hispanic jurors. And one other argument I've made, and let me just go back to Taylor v. ---- Now, wait a minute.  Give me the record site to the testimony of a juror with public drunkenness record where he's permitted to sit. If Your Honor would, I'll get those sites while I'm waiting for my rebuttal argument and provide them. If you have ER rather than RT sites, they'd be a lot more useful. Will do. Will do. Okay. Then we can all look at it. Okay. And I just wanted to add that every single piece of evidence, and it's all summarized in my briefs, have been ignored by the State courts. And this Court stated in Taylor v. Maddox, that's one way of determining the reasonableness of decision-making by the States. Counsel, you know, the way this argument comes across to me is that every trial judge or every judge in your State violates his oath of office to act impartially towards a witness, that he's ignoring lies. Well, I ---- Is this what ---- Excuse me. Is this the thrust of your argument? No. My argument is not every judge is doing that clearly. Well, they're fact-finders, aren't they? Right. And they listen to the testimony, they made findings, and they went against you, and you come here and call them liars. Okay. First of all, I'm only talking about the trial judge in this case, not all trial judges of California, some of whom I have great respect for. That's number one. You've done it 18 years, and you have a lot of experience with it. And if you're doing it in this case, I suspect you'll be doing it in some other cases. Well, Your Honor, I respectfully disagree with that. But here's the thing. There are no factual findings made against me by the trial judge against Mr. Neiblus. All he did was listen to the reasons and state, I find no prima facie case. This Court has stated in other cases that if we're going to defer to a trial court in Batson issues, we're going to need to see a clear record that the trial judge did what he was supposed to do, which was to make a sincere and reasoned evaluation of what he was presented. And there's absolutely no evidence of that at all. And I've spent all this time in Batson, and I'd just like to spend a few minutes, if I might, on a far more powerful issue, which is the introduction of a withdrawn guilty plea. And I just don't want to ---- I just don't want to be a pretextualist. Who has the burden on establishing pretext? Oh, I think that it's probably the Petitioner at the third step of the Batson analysis. And what's your argument with respect to ---- To pretext? To the Petitioner's failure to do so in this case. I would say that he never had an opportunity to do so because the trial court, applying the wrong legal standard, I might add, had found no prima facie case. So the trial court never got to the third step. That's a common source of Batson error, and one you'll find that leads to many reversals is where there's no clear record of the trial court's reaching step three at Batson to determine whether the justifications are pretextual or not. And I submit ---- And defense counsel was not prevented from commenting on these explanations that were offered by the prosecutor. That's true. That's true. He could have come forward and said, well, I disagree with you on prima facie, but if you're going to hear these explanations, here's why they're pretextual. In the heat of battle, trial counsel are doing the best they can. And, yes, there's always something better that trial counsel could have done. I'll just add that the trial court didn't enlist any aid because the trial court, as soon as these reasons were voluntarily given by the prosecutor, said no prima facie case. Counsel? You made a remark about ---- I can't remember your words, but the substance was judges give a break to prosecutors on these things. And I would imagine that in Alaska most of the judges are former criminal defense lawyers. So I'm not ---- How refreshing. I'm not experienced in a system where the judges are all ex-prosecutors. But I am ---- my experience is judges give a break to lawyers generally, all sorts of lawyers, when in doubt they assume the lawyer is telling the truth. And it's usually a good way to resolve these things accurately, actually. And in this case, when I look at the transcript, it looks like the prosecutor gave a bunch of reasons for his strike. Some of the reasons look phony, as you have ably pointed out. However, in I think most, possibly all the cases, the prosecutor gave multiple reasons, not just the phony reason. What are we supposed to do with that when we're deciding whether the State court unreasonably applied Batson? I say, Your Honor, to that, that the fact that we're dealing with a prosecutor who's giving clearly pretextual reasons shows that he's motivated by the forbidden racial animus. It's proven in his exclusion. That, to me, doesn't follow logically. I'm thinking, suppose you ask me why I don't, when I was still trying cases, why I don't like a particular jury, juror. And I say, well, there's reasons one, two, three, four, and five. And then there's another juror, and reasons one and two pertain to that juror, but I don't strike them. Well, that may be because I have a limited number of strikes, and he doesn't have three, four, and five, and he doesn't look that bad to me. It doesn't mean that I was lying when I said reasons one, two, three, four, and five motivated me to strike the first one. Right. But how can you say that this prosecutor wasn't dissembling about, you know, his main justification for striking four, if not all five Hispanic prospective jurors by using this connection to criminal troubles that are relevant to the case at hand when he's not applied that to the Hispanic prospective jurors or the non-Hispanic prospective jurors? So, you know, yes, he's given multiple reasons. I would just ask the Court not to allow that to serve as a cover for what's clearly prohibited under Batson. And I've given other reasons besides just, you know, this comparative analysis that wasn't performed by the California courts. Don't forget, I have a whole separate section on prosecutorial misconduct where I've listed another five or six dishonest things. My observation when I was a district judge, we did some experimenting with Vardir, and it looks like a lot of them that get struck, they really get struck because they're a little nuts and the lawyers are uncomfortable with them, and then they sort of make up reasons to explain why they're uncomfortable with them. Right. And this prosecutor was uncomfortable with every Hispanic. Let's take this 143 one. It wasn't just that he had a drunk driving and the prosecutor wasn't going to let someone with substance abuse sit. That does look phony in light of the other jurors with drunkenness violations sitting. Also, he was youthful. The prosecutor didn't like somebody that young. Something about his physical appearance. Long hair, an excessively casual manner. I don't know whether he means he was a hippie or a biker or what, but he didn't look like a guy who was going to support the man. Well, look, I hope Your Honor is not saying that a petitioner has to lose every bats and challenge when a smart prosecutor offers multiple reasons to serve as a cover for what he's really up to. But let me just quote the I don't know if it's a cover is my point. I mean, the prosecutor starts war-dearing this juror and he gets a feeling, this kid hates me. I wonder why he hates me. I understand Your Honor's point. Let me just quote this Court in Birx v. Borg where the Court says, while subjective factors like long hair and other things that this prosecutor relied on may play a legitimate role in the exercise of challenges, reliance on such factors alone cannot overcome strong objective indicia of discrimination. And what we have in this case is exactly that strong objective indicia. We have 100 percent of the Hispanics struck. You're saying deal with my problem because the numbers are just too great. All the Hispanics struck and there's what, five of them I think. Yes, that's yet another factor to consider, along with the prosecutor's general dishonesty in the course of the trial, along with his striking what seems to be pro-prosecution prospective jurors. Counsel, you're down to less than two minutes. If you want to reserve some time, you may want to do so. One quick point about the withdrawing guilty plea so there's no confusion. Time after time, I've been doing this case for five years, I point out that there has been no State procedural default on the guilt, on the admission of the guilty plea because there's a California case that's good law, that's right on point that says the issue is not waivable. So when the California Court of Appeal in this case decides that it was waived for failure to abide by the contemporaneous objection rule, that is objectively unreasonable. If that term means anything, it has to apply here. And time after time, they just ignore my point. There clearly is no procedural default on the guilty plea issue, and the error should have been analyzed under the Chapman Harmless Beyond a Reasonable Doubt standard. It never was because the trial lawyer said I move for mistrial instead of I object. And that is objectively unreasonable. No error is more egregious than, as every court that's ever considered the issue has said, than the admission of a withdrawing guilty plea to the charges the jury is adjudicating. Thank you. We have a little time when you come back. Thank you. We'll hear from the government. May it please the Court, Kristina Vomsahl for the warden. The court, the State courts did state a step three Batson finding, and the finding was no evidence of discrimination in the excusal of the five jurors in question here. That finding is accorded a presumption of correctness, and the record supports that finding. We know the State court, the trial court, made an express step three finding because the DA wouldn't let the court stop until it did so. And I have to say. I don't see anything in the record which indicates that defense counsel had an opportunity to attack the finding on pretext, because he didn't, since he made a mistake at the outset by saying that there was no prima facie case, doesn't the State, Mr. Dubkoff, have a pretty good argument that there should have been an opportunity for showing a pretext? There was ample opportunity, Your Honor, because after the trial court first, and this is at RT 49, the augmented transcript of the ward year. And when the court has come back and said, I find no prima facie case, the prosecutor insists that the court do more than that. Each of the reasons I just expressed, the prosecutor states, and I'm quoting, have nothing to do with race or ethnicity. They are sufficient reasons. What the court has to do is determine whether or not there were reasons that motivated the challenge and are placed on the record, and whether they are race or group neutral, end quote. Defense attorney states that's correct. Could you tell me where that is in the excerpts? You know, we don't all carry the record around with us. We have the excerpts that you gave us. So if you rely on them, it's nice if I can look at them. The excerpts, if assuming defendant has the entire excerpts of record. You have the entire excerpts of record. They were served on you. Then it's in the augmented. I don't have the site, Your Honor. I'm sorry. That's what I was asking. I don't. It's in the augmented. Look, it looks kind of suspicious. All the Hispanics go and a bunch of whites with the same thing stay. Your Honor, that is also incorrect. Why? The, first of all, argument is preliminarily that defense counsel never raised any issue about comparative analysis or pretext in the trial court when the prosecutor and the trial court would have the opportunity to view in the whole context. That gets us to Judge Scanlon's question. Did he have an opportunity? It's waived. And he did have an opportunity. But in addition, the reason the opportunity wasn't seized upon, and it was there, and I can go into more where the prosecutor then says to the court, the court says, well, I still find no prima facie finding. And the court, the prosecutor says, you need to do more than that. I'll read you the rest of the discussion there. It starts at 149, but it goes on where the prosecutor says, the court comes back and says, well, I still find no prima facie case. And then the prosecutor says, you need to make more of a finding. So at 155, the court comes back and says, now I'll make this observation. The people that have been identified all look to me as though they are well, well are Hispanic. I'll accept that for purposes of discussion. But I do not find that these persons were challenged because of their group association rather than because of any specific bias. And then the prosecutor states, in reply, I think you hit the proper test squarely on the head. What really matters is that you've listened to the reasons for the excusal of each of the jurors who have been brought into question and made your determination. That is a step three analysis. That is the analysis that this Court should owe great deference and defendant has never established. It's clearly erroneous in any respect. But if you want to go to why defendant waived his comparative analysis argument, the other DUIs, it's very simple. Juror number two, DUI, 20 years ago, he admits. What's his job? What are his other factors? I was in the police air force. I'm age 47. I have two grown children, a wife, a retired teacher. He's got extensive life experience. That was one of the prosecutor's criterion. And a job in the police air force. That sounds pretty pro-prosecution. You would want to keep somebody like that whose only criminal offense was 20 years ago when he was a kid. Okay? And he admits it right up front. The other DUI, 13 years ago, he's a manager at a tech company. His wife's an engineer. He has two children and prior service as a juror where the verdicts were reached. What's the comparison with Mr. O? Public drunkenness, very little life experience, no family, no real ties to the community. He's a truck driver. This is not someone a prosecutor would want to keep on a jury in comparison to these two other people. But the comparison issue was waived precisely because of the type of people who were and were not challenged. But in the major picture is the prosecutor wasn't given the opportunity to point all these things out. Now on a cold record I go back and I seize these things. But his subjective reasoning in the balance of things, why is one of these challenged jurors number 11? Why isn't the number one chosen first? The guy who right from the start comes up at sidebar and says my brother and one of my friends are in prison or have been charged with nearly identical crimes as those at issue here. Sidebar conferences, three of the jurors who are discharged come before the court and the parties and acknowledge relatives with nearly identical types of criminal convictions or encounters. These are not prosecutor's type of jurors. This is nothing racially motivated. The other two people, again, Mr. O, who is the public drunkenness, which we would assume is a very different kind of DUI, and his lack of life experience. And then the final one, Ms. S, who the prosecutor does one little bit of comparative analysis and says, you know, I just got rid of a blond, very white juror who had the same total lack of life experience as Mr. Ria. Given all of these factors, we would say the trial court's step three finding is amply supported by the record and that the record itself shows no discriminatory intent and appellant has never shown otherwise. For all those reasons, we would submit the district court's finding should be affirmed. What about the discussion of the guilty plea? Yes, Your Honor. It sure is strange to be handling a criminal case where the jury knows that the guy pleaded guilty. Well, first of all, our argument is that he did waive it because he never moved to strike. The motion that he made did not go to striking evidence. About as soon as he got his wits together, he moved for a mistrial. But the way the evidence came in, first of all, he opened the door to it. He spoke about all the other aspects of it. And why would he be giving these interviews with the probation officer? Why would he be lying about and saying, which is what he claimed on the stand, well, I only said. For all sorts of reasons, people sometimes are talking to a probation officer because they're on probation for some previous offense. About this specific case, admitting that he's about to be sentenced, so he has to lie to try to curry favor. He said on the stand, I thought I was going to be sentenced to 32 years. Cutting it a little fine in terms of the jury. Supposing that moving for a mistrial is good enough to count as objecting, or supposing alternatively that you don't have to object under California law as appellant's counsel contends. Well, assuming that. Let's suppose we get past the waiver issue. Why is it okay that the jury was informed that this man had previously pleaded guilty to this offense? Well, the error would, we would argue, was harmless under beyond a reasonable doubt under Chapman in light of the record as a whole, in light of his admission to, at the time of his arrest, to the police officer, that I forgot I had those drugs in my pocket or I would have used those, too, in light of all the, all of the defense witnesses. And the jury obviously rejected their testimony outright, appeared to be lying on the stand. And they all had unbelievably long, extensive criminal records. In using defense in a possession case, the defense basically, if I, I didn't have Cianter, if I had Cianter, I would have used the dope. No. His testimony was, I never said that. I didn't know there was anything in my pocket because I borrowed my brother's clothing. That's what it means. If I had known there was dope in the pocket, it wouldn't be in the pocket. It would be in my bloodstream. But he didn't say that to the officer. He said, I forgot it was there. In other words, I once knew it was there, then I got so high on the drugs I already shared with my friends that I forgot or I would have used that, too. That's what the I forgot means. And that's what the officer testified to, and that's what the jury obviously credited. So argument is, it's waived. His argument about Wells being good law is totally erroneous because the California that's a state court of appeal case from the 60s. The California Supreme Court in the 80s issued a case saying unequivocally that you must object to preserve this claim. And he did not. And I cite that in my brief. So that the claim not only is waived. It's Kelly. It's Kelly. And that's from the California Supreme Court, which, of course, is always binding and would supersede and overrule sub salento any previous court of appeal or a lower court case. So he's incorrect on the law. He's incorrect in that it was truly waived because California requires a specific objection to evidence, not vague objections that everybody's supposed to know might mean one thing or another. He never moved to strike. That's your most fundamental thing. And this evidence from the prosecutor's delivery came in over time. The document was admitted into evidence and handed to the defendant to look at. There's no objection. There's no request to make sure it's limited or anything is redacted. And then the defendant is asked to read it and testify from it. So all of these things came in in stages, and yet not one objection was raised. So we do believe that the district court was correct in its finding, that it was waived under a valid state procedural bar, unless there are any further questions. No further questions. Thank you, Your Honors. Mr. Dukoff, you have some reserve time. Not a lot, but. Thank you, Your Honor. I will be as brief as I possibly can be. You know, when my adversary talks that the admission of a guilty plea is harmless beyond a reasonable doubt, she ignores the unanimity or virtual unanimity of every single case that has ever addressed the issue that finds that it's prejudicial per se. And that's the point that's what makes this the rarest of rare cases, is because that, the admission of a withdrawing guilty plea is a nuclear bunker buster, and it cannot be overcome with some kind of harmless error analysis in any case. But even, let's look at the facts of this case just briefly. It's not a case with conclusive evidence of guilt. It comes down to completely the jury's evaluation of his credibility. And if it's completely a credibility determination to hear that he's already pled guilty, I say that no lager, as do all of the judicials, including Judge Weinstein. By the way, he says it in his treatise and from the bench in a case, both of which are cited in my. What about Kelly? Okay. Now, she says that my opponent says that Kelly has overruled the case that I cited, People v. Wells. Oh, by the way, before I forget, Your Honor, I have those ER sites for the court asked me about. Why don't you give them to us? Where he justifies striking Lewis is at ER 143. The fact that juror number two had two DUIs is at ER 51 to 52, and that juror number five had been convicted of a DUI is at ER 120. And so 120, excuse me. 120. 120, yes. Okay. And, you know, Kelly did not address the specific instance of the admission of a withdrawn guilty plea. But a confession. Yeah. But what I want to impress upon the Court is that a guilty plea is sui generis. It's a unique sort of thing. And Kirchhoff, the Supreme Court, when they reversed, admittedly not on constitutional grounds, but when they reversed for the admission of a withdrawn guilty plea, they relied on that point, that a guilty plea is different than a confession. It's a conclusive determination of guilt. And that's what, if you'll have your law clerks review the landscape, there's not that many cases on the issue. I think Judge T.G. Nelson, in his concurrence in the Stanton v. Whitley case that I rely on, says, you know, this is a unique era in the annals of the common law. And that's a bit of an exaggeration, because you do see a scattering of cases, and I've cited them. And so Kelly doesn't address this specific instance. And if you look, and when I talk about judicial unanimity, it's not only on the era regarding the admission of it, it's on the per se prejudicial nature of the admission, and it's on the non-waivable nature of the problem. And I'm sure the Court can find those cases. And so, okay. Thank you. Thank you. There's a question from Judge Kleinfeld. On those other jurors with the DUIs, it was 15, 20 years ago. My – I happen to have several friends who had alcohol problems in the 70s. Alaska was kind of a wild place in the 70s during the pipeline. Unlike today. So my experience with these arrested alcoholics, the alcoholics that don't drink anymore, my own experience is they're frequently kind of harsh, kind of tough. And if I were a prosecutor, I'd love to have them on a jury. Why isn't your opponent's argument that their very old DUIs distinguish them from the juror with the recent drunkenness violation a good argument? Okay. Well, I'm not sure. I don't recall in the record whether the Hispanic juror had – it was a recent DUI or not. And I'm not sure the record reveals that fact. But one thing, I don't want to get lost in the shuffle. And, you know, I really need to make this argument, is that we're dealing with a basically dishonest prosecutor in this case. If you look at the last section of my brief, as I said, somewhere it's a veritable catalog of abuses. There are demonstrated lies and false impressions that he created in front of the jury. And we now, looking back as an appellate court, can see that this guy is not worthy. Counsel, I think we understand your position. Thank you. Thank you very much. The case just argued will be submitted for decision. And we will hear argument in the last case, which is Martin v. Plyler. Now, in this case, we will only hear from the petitioner appellant because the warden did not file a brief.
judges: Beezer, O'scannlain, Kleinfeld